| | | |
|---|---|---|
| **RODNEY REED** | ) | No. 8701 |
| vs. | ) | IN THE DISTRICT COURT |
| **STATE OF TEXAS** | ) | 21st JUDICIAL DISTRICT |
| | ) | OF BASTROP COUNTY, TEXAS |

**NOTICE OF APPEAL**

This document contains some pages that are of poor quality at the time of imaging.

FILED IN
COURT OF CRIMINAL APPEALS

JAN 16 2015

Abel Acosta, Clerk

To The Honorable District Judge:

On January 6, 2015 and under Rule 25.2 of the Texas Rules of Appellate Procedure, Rodney Reed, Defendant and Movant in the above styled case, files this written notice with the clerk of this court that defendant intends to appeal to the Texas Court of Criminal Appeals as provided under Article 64.05 of the Code of Criminal Procedure. This appeal is from the written order denying Reed's Motion for DNA Testing signed on December 12, 2014. A copy of this Order is attached as Exhibit 1.

Respectfully submitted,

Bryce Benjet
State Bar No. 24006829
THE INNOCENCE PROJECT
40 Worth St.
New York, NY 10013
(212) 364-5340
(212) 364-5341 fax

Filed 12:03 m

JAN 12 2015

Sarah Loucks
District Clerk, Bastrop County

Andrew F. MacRae
State Bar No. 00784510
LEVATINO|PACE LLP
1101 S. Capital of Texas Highway
Building K, Suite 125
Austin, TX 78746
(512) 637-8565
(512) 637-1583 (fax)

ATTORNEYS FOR RODNEY REED

## CERTIFICATE OF SERVICE

On the 6th day of January 2015, a copy of the foregoing motion was served upon the Bastrop County District Attorney by U.S. Mail or hand delivery.

Bryce Benjet



# Exhibit 1

Cause No. 8701

| STATE OF TEXAS | § | IN THE 21ST DISTRICT COURT |
| | § | |
| v. | § | OF |
| | § | |
| RODNEY REED | § | BASTROP COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After considering the record in this case, and after making credibility determinations following a live hearing in this Chapter 64 proceeding, the Court enters the following findings of fact and conclusions of law:

Relevant Procedural History

1. The State, on April 8, 2014, filed a motion to set an execution date for Movant, Rodney Reed. The State requested a date of November 19, 2014.

2. Movant, on April 8, 2014, filed a motion to recuse the elected judge overseeing his case, Judge Towslee-Corbett.

3. Movant, on April 14, 2014, opposed setting of an execution date. Movant requested indefinite delay of his execution to conduct DNA testing, to file a subsequent state habeas application, and to file a scientific-evidence application.

4. On May 23, 2014, Judge Towslee-Corbett issued an order of voluntary recusal.

5. On May 28, 2014, Judge Underwood, the presiding judge of the Second Administrative Judicial Region, assigned the undersigned judge to preside over the case.

6. On June 18, 2014, the Court set a hearing on the State's motion to set an execution date.

7. On June 17, 2014, the Court re-set the hearing on the State's motion to set an execution date at the request of the parties.

8. On July 14, 2014, the Court held a hearing on the State's motion to set an execution date. The Court entered an order setting Movant's execution for January 14, 2015.

1

9. On July 14, 2014, immediately before the hearing on the State's motion to set an execution date, Movant filed the instant Chapter 64 motion. The motion contained no affidavit from Movant and no affidavit from a DNA expert. Movant, however, attached several affidavits purporting to undermine the State's forensic case at trial.

10. At the July 14, 2014, hearing, the Court signed an order permitting agreed-to DNA testing. The items to be tested included four specified hairs and various swabs taken from the victim's body.

11. At July 14, 2014, hearing, Movant requested indefinite delay of his execution to conduct DNA testing.

12. The State timely responded on September 12, 2014. The State attached several exhibits regarding the existence, custody, and present condition of evidence collected in connection with the investigation of Movant's offense.

13. Movant filed a letter requesting a hearing on the Chapter 64 motion on October 14, 2014.

14. The State filed a letter opposing a hearing on the Chapter 64 motion on October 22, 2014. The State attached an exhibit reflecting an amended inventory regarding fingerprint evidence.

15. Movant filed a letter again requesting a hearing on the Chapter 64 motion on October 23, 2014. Movant attached, for the first time ever, an affidavit from a DNA expert.

16. On October 27, 2014, the Court set a hearing on Movant's Chapter 64 motion.

17. On November 18, 2014, the State moved to modify Movant's execution date. The State requested an amended date of March 5, 2015.

18. Movant filed a reply to the State's Chapter 64 response on November 24, 2014. Movant attached, for the first time ever, a personal affidavit.

19. Movant filed a motion to withdraw his execution date on November 25, 2014, immediately before the hearing on his Chapter 64 motion. Movant requested indefinite delay of his execution to conduct DNA testing or to appeal the denial of DNA testing.

20. The Court held a live hearing on the Chapter 64 motion on November 25, 2014. Movant called crime-scene and forensics expert, John Paolucci, and DNA expert, Deanna Lankford. The State called Gerald Clough, an investigator with the Office of the Attorney General of Texas, Lisa Tanner, the special prosecutor on Movant's case, and Etta Wiley, a deputy district clerk for Bastrop

2

County. Movant and the State also introduced various exhibits. After considering the record in this case, and after making credibility determinations from the hearing, the Court denied Movant's Chapter 64 motion.

21. At the November 25, 2014, hearing, the Court granted the State's motion to modify Movant's execution date. The Court entered an amended execution order setting Movant's execution for March 5, 2015.

22. On December 2, 2014, Movant requested a subpoena to obtain a personal reference sample for purposes of the agreed-to DNA testing ordered on July 14, 2014. A subpoena issued on December 3, 2014.

Findings of Fact and Conclusions of Law

23. Reed has failed to prove by a preponderance of the evidence that his Chapter 64 motion is not made to unreasonably delay the execution of sentence of administration of justice. This is explained below:

    23a. Movant, to date, has not provided the Court with any information regarding time estimates for the extensive DNA testing he seeks. This alone, the Court believes, is sufficient to show that Movant has failed in his burden to show that his request is not made to unreasonably delay his execution.

    23b. Movant filed his Chapter 64 motion on the day this Court initially set Movant's execution date. This timing, the Court believes, was not coincidental, but a designed tactic to delay the setting of Movant's execution date. Movant's repeated desire to indefinitely delay his execution, instead of proposing concrete timelines, further supports the Court's belief that his Chapter 64 motion was filed for purposes of unreasonable delay.

    23c. The Court notes that Movant's Chapter 64 motion was filed thirteen years after Chapter 64's enactment and approximately three years after Chapter 64's most recent amendment. The Court finds that there was no legal impediment to filing a Chapter 64 motion during this entire period. The Court also notes that Movant has been continuously represented by counsel during his postconviction proceedings, as indicated by the multiple state and federal opinions generated during these proceedings. The lack of filing during this period, which was without factual or legal impediment, leads the Court to believe that the present Chapter 64 motion is filed for purposes of delay.

    23d. As pled in Movant's Chapter 64 motion, Movant's first informal request for DNA testing occurred three days after the United States Court of Appeals affirmed the denial of his federal petition for writ of habeas

3

corpus. This timing is important because, as demonstrated in the State's response, there is little chance for relief following affirmation of the denial of a federal habeas petition. Thus, the Court finds that Movant only sought DNA testing after his other efforts at relief proved unsuccessful. This diminishes Movant's case that his present Chapter 64 motion was not filed for purposes of unreasonable delay.

23e. As demonstrated by the State's exhibits, Movant's attorney—Bryce Benjet—is counsel of record for Larry Swearingen, another Texas death row inmate. Mr. Benjet filed a Chapter 64 motion for Swearingen approximately a year and a half before Movant's Chapter 64 motion. Mr. Benjet filed another Chapter 64 motion for Swearingen approximately two months before Movant's Chapter 64 motion. Movant's motion is substantially similar to Swearingen's initial Chapter 64 motion and attached to Swearingen's initial Chapter 64 motion is a personal affidavit from Swearingen and an affidavit from a DNA expert. Swearingen's second Chapter 64 motion has attached to it another affidavit from a DNA expert. Thus, the Court concludes that Movant, through his counsel, Mr. Benjet, had the legal and factual knowledge to file Movant's present Chapter 64 motion more than a year before it was filed. Movant's delayed presentation of a personal affidavit and an expert affidavit, the Court finds, is a purposeful attempt at delay.

23f. Movant has been cited for abuse of the writ on five separate occasions by the Court of Criminal Appeals. As demonstrated by the State's evidence, the United States District Court for the Western District of Texas ruled that Movant had untimely sought forensic testing and was dilatory in submitting an affidavit. The United States Court of Appeals for the Fifth Circuit also found that Movant submitted evidence in an untimely fashion. Accordingly, the Court finds that Movant has engaged in a dilatory and piecemeal litigation strategy throughout his postconviction proceedings and the Court believes this Chapter 64 motion is a continuation of such behavior.

23g. Movant has thrice asked the Court to indefinitely postpone his execution date—once in opposing the State's motion to set an execution date, once at the hearing to set an execution date, and once at the hearing on this Chapter 64 motion via a motion to withdraw the date. The Court finds that Movant's request for, essentially, indefinite stays works against him in proving that he is not attempting to unreasonably delay his execution.

23h. Movant, at the live evidentiary hearing on the Chapter 64 motion, asked for DNA testing on a substantial amount of evidence that he had not mentioned in his Chapter 64 motion. Consequently, Movant has not

4

individually briefed or explained the type of testing that he would like performed on these items. The Court finds this dilatory request to be another example of Movant's last-minute amendments to his Chapter 64 pleadings, which this Court considers to be an attempt to unreasonably delay his execution.

23i. The Court rejects Movant's rationale for failing to request and brief those items of evidence raised for the first time at the hearing on the Chapter 64 motion; specifically, that Movant did not know of the evidence's existence until the State attached inventories to its Chapter 64 response. Movant has failed to demonstrate that he requested such inventories from the State prior to the State's Chapter 64 response or that the State refused him such inventories upon request. Further, one of the items of evidence that Movant requested to be tested for the first time at the Chapter 64 hearing—beer cans—has been heavily litigated during the course of Movant's postconviction proceedings. It is inconceivable to the Court that Movant did not know that such item existed. Moreover, Movant requested DNA testing of items of evidence in his Chapter 64 motion—a condom, a knife, and a shirt piece—that were not introduced at trial and were, therefore, "unknown" to Movant until the State attached an inventory to its response. Stated another way, Movant requested testing of some items he did not "know" were in the possession of the State or District Clerk. The Court finds Movant's unsupported excuse to be further evidence of his attempts to unreasonably delay his execution.

23j. As demonstrated by the State's evidence, Movant is in possession of extracts from multiple pieces of evidence he seeks testing on and which he could test independently of a Chapter 64 motion. This includes the beer cans, various swabs from the victim's body, stains from the victim's pants and back brace, and a condom. Movant's request to test these items via Chapter 64 when he could conduct the testing himself, especially given his offer to pay for DNA testing, leads the Court to believe that his request for DNA testing is for the purpose of unreasonable delay.

23k. The Court finds that Movant has requested DNA testing of items of evidence that the State has already agreed to test. This includes various hairs and swabs from the victim's body. The Court finds that this request for redundant testing is, again, an attempt to unreasonably delay the execution of sentence.

23l. Movant has repeatedly stated, in pleadings and in court, that he plans to soon file postconviction motions for relief pursuant to Articles 11.071 and 11.073 of the Texas Code of Criminal Procedure. To date, despite

5

Movant's promise of diligence, he has not filed either pleading. The Court views this procrastination as another example of an attempt to unreasonably delay his execution.

23m. Movant waited more than four months to obtain a subpoena for a reference sample from himself for purposes of the agreed-to DNA testing that this Court ordered in July. This delay in requesting a reference sample demonstrates, the Court believes, unreasonable delay and Movant's tardy actions in his agreed-to DNA testing makes this Court believe he could not complete his requested DNA testing before the present execution date.

24. The Court finds that Movant has failed to prove by a preponderance of the evidence that he would not have been convicted but for exculpatory results from DNA testing. This is explained below:

24a. The State's case on guilt-innocence was strong—Movant's DNA was found both on and inside the victim, which demonstrated presence; the intactness of Movant's sperm inside the victim's vaginal cavity, the peri-mortem injuries to the victim's anus, Movant's saliva on the victim's breasts after she took a shower the evening before her murder, and the small amount of semen in the victim's panties demonstrated sexual assault contemporaneous with murder; the peri-mortem injury to the victim's anus and the obvious signs of sexual assault—the victim's bunched up panties, a broken pants zipper, partially unclothed, bruises to the arms, torso, and head of the victim—demonstrated lack of consent; and additional evidence indicated that Movant frequented the area of the victim's disappearance at the time the victim disappeared and the Movant matched the height of someone who would have fit the adjusted seat in the victim's truck.

24b. Many of the items of evidence Movant seeks to test were already before the jury and the jury knew they did not match Movant—their exculpatory nature was already before the jury. For example, Movant's DNA and forensics expert testified that one of the hairs Movant seeks to test did not match Movant's genetic profile. As another example, a DPS forensic scientist testified that none of the hairs collected from the victim's body microscopically matched Movant's hair. And, as another example, Movant did not match any of the fingerprints collected during the course of the investigation. Thus, the jury knew that many of the items Movant seeks to test were not from him.

24c. Further, the Court finds that none of the evidence Movant seeks to test was so integral to the State's case that the jury would have acquitted despite knowing that Movant's DNA was not on the item. Many of items

6

were in a truck shared with the victim's fiancé and evidence at trial demonstrated that other people had ridden in the truck. Thus, the jury would not be surprised to know that foreign DNA was found on items originating from the truck. Further, many of the items of evidence have been handled by ungloved individuals, which further undermines the value of such "exculpatory" results before a jury. Ultimately, at best, exculpatory results from the items Movant seeks to test would muddy the waters, not prove by a preponderance that he would have been acquitted.

Accordingly, Movant's Chapter 64 motion is DENIED.

It is so ORDERED.

DONE AND ENTERED this ___/2___ day of ___December___, 2014.

_____
Doug Shaver
Presiding Judge
21st District Court
Bastrop County, Texas

Sitting by Assignment

FILED 8:40 AM
DATE 12/16/2014
Sarah Loucks
District Clerk, Bastrop County

NO. **8701**

BOND $ _____

WARRANT NO. _____

THE STATE OF TEXAS VS. RODNEY REED

21ST DISTRICT COURT

CHARGE: CAPITAL MURDER

WITNESS:

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURY, for the County of Bastrop, State of Texas, duly selected, empaneled, sworn, charged, and organized as such at the JANUARY Term A.D. 1997 of the 21st Judicial District Court for the said County, upon their oaths present in and to said court at said term that RODNEY REED hereinafter styled Defendant, and before the presentment of this indictment, in the County and State aforesaid, on or about the 23rd day of April, A.D. 1996, did then and there intentionally cause the death of an individual, namely Stacey Stites, by strangulation, and the defendant was then and there in the course of committing and attempting to commit the offense of aggravated sexual assault of Stacey Stites;

Count Two

And the grand jurors aforesaid, upon their oaths aforesaid, do further present in and to said court that RODNEY REED on or about the 23rd day of April, A.D. 1996, did then and there intentionally cause the death of an individual, namely Stacey Stites, by strangulation, and the defendant was then and there in the course of committing and attempting to commit the offense of kidnapping of Stacey Stites;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

_____
Foreman Grand Jury

I, the undersigned Clerk of District and County Court at Law Courts for Bastrop County, Texas, do certify that the foregoing is a true and correct copy of the original document now on file and record in my office. WITNESS my hand and seal of said Court this _____ day of _____ 20_15_ Sarah Loucks, Clerk of Courts By _____ Deputy

FILED _____
DATE 5-21-97
LaNelle Hibbs
District Clerk, Bastrop County